

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

October 8, 1947

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Opinion No. V-402

Re: Whether inclusion of
entire community estate
in determining amount
of Federal Estate Tax
due at death of husband,
which inclusion increased
the taxes paid the State
under Ch. 5a, Title 122,
V.C.S., prevents a State
tax on the right to suc-
cession to the wife's
one-half community in-
terest when the wife's
death occurs within five
years from the death of
the husband

Dear Sir:

You have requested an opinion from this De-
partment on the above-captioned matter. Your letter of
September 17, 1947, and the letter of protest which ac-
companies your request apprise us of the following facts.

During the years of their marriage John Wil-
liam Sanders and Louise Wylie Sanders accumulated con-
siderable property. Of this property we are concerned
here with that which was community property under the
Texas law. John William Sanders died on December 6,
1943. The State Inheritance Tax return, thereafter
filed, showed a total gross estate, subject to taxa-
tion in the State of Texas, in the amount of $232,122.49,
which amount represented the value of his one-half of
the community estate. The State tax subsequently paid
in accordance with the provisions of Chapter 5, Title 122,
V.C.S., was in the amount of $3,177.61.

In computing the Federal Estate Tax the entire community estate was included as part of the gross estate of John William Sanders. Section 811(e)(2), Title 26, U.S.C.A. Under the provisions of Chapter 5A, Title 122, V.C.S., eighty per cent of the Federal tax imposed on this estate under the provisions of the Revenue Act of 1926 less the amount paid the State as inheritance taxes, a sum in the amount of $6,939.09, was then paid the State.

Louise Wylie Sanders died on July 2, 1945. A State Inheritance Tax in the amount of $3,113.15 has been paid under protest. The tax, as assessed, was based on a valuation of the property passing which included the value of Louise Wylie Sanders's one-half interest in the community estate.

Thus the question is whether or not the inclusion of the entire community estate in determining the amount of Federal Estate Tax due at the death of Mr. Sanders, which inclusion increased the amount of taxes paid the State under Chapter 5a, Title 122, V.C.S., prevents a State tax as provided by Chapter 5, Title 122, V.C.S., on the right to succeed to Mrs. Sanders's one-half community interest when her death occurred less than five years after the death of her husband.

The taxpayer, in contending that no tax is now due the State as a result of the passing of the wife's one-half of the community estate, relies on certain provisions of Article 7125 and on Section 8 of Article 7144a. The relevant portions of Article 7125 are as follows:

> "The only deductions permissible under this Law are. . . an amount equal to the value of any property forming a part of the gross estate situated in the United States received from any person who dies within five (5) years prior to the death of the decedent, this reduction, however, to be only in the amount of the value of the property upon which an inheritance tax was actually paid and shall not include any legal exemptions claimed by and allowed the heirs or legatees of the estate of the prior decedent. . ." (Emphasis added throughout this opinion).

Section 8 of Article 7144a reads as follows:

"Sections 1 to 7, inclusive, of this
Chapter shall always be construed so as not
to increase the total amount of taxes pay-
able to the State and the Federal Govern-
ment combined upon the estates of decedents,
the only purpose of said additional tax be-
ing to take full advantage of the eighty
(80%) per cent credit allowed by the Federal
Revenue Act of 1926, to those who have paid
any estate, inheritance, legacy, or succes-
sion tax to any State or territory or to the
District of Columbia, in respect to any prop-
erty included in the decedent's gross estate.
Acts 1933, 43rd Leg., p. 581, ch. 192, § 2a."

Article 7125 is found in Chapter 5 of Title
122 and Article 7144a constitutes Chapter 5a of Title
122. The history, the theory, and the basis of the tax
imposed in these two chapters is entirely different.
The basic provisions of Chapter 5 were enacted by the
Legislature in 1923. Chapter five imposes a tax on
"All property within the jurisdiction of this State,
. . . and any interest therein, . . . which shall pass
absolutely or in trust by will or by the laws of de-
scent or distribution of this . . . State. . . in ac-
cordance with the following classification; . . ."
The taxes so imposed "are held to be privilege taxes,
and not property taxes. In other words, the tax is
upon the right of succession and not upon the property,"
and is levied "not on value or amount of the estate
but on the value of or amount of property passing to
a particular class of parties." State v. Hogg, 72
S.W. (2d) 593.

These taxes were the only "death" taxes of
any kind imposed by the State until 1933. In that
year the Legislature enacted Article 7144a in order
to take advantage of the eighty per cent credit pro-
vision embodied in Section 301(b), Ch. 27 of the
Federal Revenue Act of 1926. The full provisions of
the present Federal Estate Tax Act are found in the
Internal Revenue Code, Ch. 3, Title 26, U.S.C.A.

The first Federal death taxes were imposed
in 1797. This Act was repealed in 1802. Other acts,
both relatively short-lived, intervened before the
adoption of the Federal Inheritance Tax Act of 1898,

which, in turn, was repealed in 1902. In 1916 Congress imposed a tax different in nature from that imposed by the Act of 1898 in that the tax is on "the exercise of the legal power of transmission of property by will or descent. . ." rather than on "the legal privilege of taking property by devise or descent." Stebbins v. Riley, 268 U.S. 137. This tax is in the sum of varying percentages of the value of the decedent's net estate--hence the term "Estate" Tax.

Both the old inheritance tax law and the 1916 estate tax law were unsuccessfully attacked as an invasion of the power of the States to regulate the transmission of property by death. Knowlton v. Moore, 178 U.S. 41; New York Trust Co. v. Eisner, 256 U.S. 345. But even though these attacks failed, the dissatisfaction with the Federal Government's "invasion" of this field of taxation remained; and in 1924 the first "credit" provision, which allowed deduction of the State inheritance and estate taxes in an amount not to exceed twenty-five per cent of the Federal tax, was passed. Rev. Acts of 1924, § 301(b). The Revenue Act of 1926, § 301(b) increased the amount of "credit" to eighty per cent. This eighty per cent is still measured by the rates as fixed by the 1926 Act, although there have been several increases in the Federal rates since that time. Sec. 81.9, U.S. Tres. Reg. 105.

The wording of the "credit" provision in the Federal act requires that the estate, inheritance, legacy or succession taxes must have been actually paid to the State before the taxpayer may deduct the amount of such State taxes from the total Federal Estate Tax. Rouse v. U.S., 65 Ct. Cl. (Fed.) 749, certiorari denied, 278 U.S. 638; 49 Sup. Ct. Rep. 32. Thus if the full amount of the eighty per cent credit is not taken up by the State tax, the taxpayer's "credit" is reduced accordingly with the result that he pays the same overall amount regardless of the eventual disposition of that amount between the State and the Federal Government.

After the enactment of this provision, most of the states whose existing laws did not result in a tax sufficient to equal the full amount of the eighty per cent "credit" passed legislation requisite to that end. Texas was among such states and the provisions contained in Article 7144a, Ch. 5a, R.C.S., became a

part of our laws in 1933. The chapter itself is entitled "Additional Inheritance Taxes." Likewise various sections of Article 7144a refer to the "inheritance tax. . . hereby imposed. . ." etc., despite the wording of Section 1 to the effect that there is hereby levied an "inheritance and transfer tax" in addition to the inheritance tax already levied. However, regardless of the terminology used, the tax as imposed by Article 7144a is an entirely different tax from the taxes levied by Chapter 5. As we have previously pointed out, the taxes imposed by Chapter 5 are levied against the amount or value of the property passing to particular persons. The tax imposed by Chapter 5a is levied against the net value of the taxable estate of the decedent situated and taxable in the State of Texas. Logically and actually it rests on the same basis as the parent Federal Act. It could rest on no other; for, although it levies a direct tax, the amount of that tax is in a fixed percentage of a total amount previously determined by the Federal Act in accordance with the 1926 rates less the inheritance taxes paid under State law. Therefore the provisions of the Federal law, not the provisions of the Texas law, determine every step to be taken in computing the total tax figure. After the total tax has been ascertained, the State steps in by virtue of Article 7144a to claim the difference between the sum of inheritance taxes due under Chapter 5 and the eighty per cent of the total sum of the estate tax imposed by the 1926 Revenue Act "by reason of the property of such estate which is situated in this State and taxable under the laws of this State."

When the Federal Government taxed the entire community estate on the death of the husband, of course it did so by virtue of Section 811(e)(2), Title 26, U.S.C.A., which was enacted in 1942. This Section provides for the inclusion in the gross estate of a decedent all of the community property held by the decedent and the surviving spouse with the exception of such part as may be shown to have been received as compensation for personal services actually rendered by the surviving spouse or derived originally from such compensation or from separate property of the surviving spouse. There is a further proviso to the effect that in no case shall the interest included in the gross estate of the decedent be less than the value of such part of the community property as was subject to the decedent's power of testamentary disposition. The

constitutionality of this Section was upheld in Fernandez v. Wiener, 66 S. Ct. 178, and in U.S. v. Rompel, 66 S. Ct. 191. As a result, State community property laws receive only a limited recognition in the field of Federal taxation. When the additional tax was imposed by virtue of Chapter 5a, obviously the top figure of eighty per cent was derived from the proper total figure of the Federal tax. Only in this way could the State take full advantage of the Federal credit provision, and such is the announced intent of the State statute. The taxpayer's burden was not increased at that time as had he not paid the difference between the State tax as assessed under Chapter 5 and said eighty per cent of the Federal tax he would have paid the difference to the United States Government. In State v. Wiess, 171 S.W. (2d) 848, after pointing out that in any event the same amount is paid by the taxpayer, the Court said, "We are unable to see how such a law can violate any part of our Constitution." Some courts have said that by reason of this lack of injury the taxpayer has no standing to even question the constitutionality of a statute enacted for the purpose of taking advantage of the credit allowed by the Federal Act. Re Knowles, 295 Pa. 571, 145, Atl. 797. In any event the taxpayer in this case did not protest the payment of the additional tax, the amount of which was necessarily increased by the Federal Government's inclusion in the gross estate of the value of an estate which, under the Texas law, was not owned by the husband.

We cannot see that the action of the Federal Government in taxing the entire community at the death of the husband prevents the State from taxing the right of succession to the wife's share of the community on her death.

Section 8 of Article 7144a, previously quoted, does not preclude this result. Obviously, Section 8 was meant to apply to taxes due on the transfer of and succession to one decedent's estate. At the time of the death of the husband the total amount of taxes payable to the State and to the Federal Government was not increased as a result of any provision contained in Sections 1-7 of Article 7144a. Its terms cannot now be applied to obviate taxes accruing on the succession to the estate of a different decedent. Moreover in this case as to this estate and this decedent there is no Federal tax since the wife's one-half of the community estate was taxed less than five

years before. T.D. 5408, Cum. Bull, 1944, p. 578.
Consequently there is no additional State tax due un-
der Chapter 5a and no increase on a "combined" pay-
ment to the State and the Federal Government.

This brings us to a consideration of the sec-
ond ground of protest, i.e.,that under the provisions
of Article 7125, Ch. 5, deduction should be allowed for
the wife's community interest as property previously
taxed within five years. But by the exact wording of
Article 7125 there may be deducted only the value of
such property as was "received from any person who
dies within five (5) years prior to the death of the
decedent" with the further proviso that the deduction
"shall be only in the amount of the value of the prop-
erty upon which an inheritance tax was actually paid.
. . ." The wife did not receive her share from her
husband at his death. Under the Texas law she owned
the one-half undivided interest at that time. Her
one-half of the community was not taxed under any of
the provisions of the Texas Inheritance Tax statutes
as contained in Chapter 5; so as to this property no
inheritance tax was actually paid. These provisions
of Article 7125 clearly show that the deduction which
is allowed is for property previously taxed by virtue
of the provisions of Chapter 5. In the absence of
specific proviso, allowable deductions as to payments
made under Chapter 5a are found only in that chapter
or accomplished indirectly through provisions of the
Federal Act.

The radical difference in the nature and
basis of the taxes imposed by Chapter 5 and the tax
imposed by Chapter 5a, which difference we discussed
at length at the outset of this opinion, in itself
prevents the transposition of provisions from one act
and application to another. A good deal has been
written about 811(e)(2) and its effect on the tax-
payer in community-property states. See Tax Magazine,
Jan., 1947, p. 64; Feb., 1947, p. 130 for articles dis-
cussing various aspects of the unequal and confisca-
tory results in the Federal tax field that have
sprung from a measure obviously intended to equalize
Federal estate taxes rather than to penalize the tax-
payer in community-property states. One writer char-
acterizes such results as flowing from the impact of
jurisprudence upon the statute. As to the inequali-
ties that are inherent in the Federal law the States
are powerless; but if, as a matter of policy, the

people of Texas desire to reduce the tax burden on the passing of community property by a reduction in State Inheritance Taxes, legislative action is necessary. In a very excellent article, "Aftermath of the Hebst and Weiner Decisions," 24 T.L.R. 437, Mr. Winstead points out that in most cases, the entire community estate is attributable to the husband, and that in the usual case, assuming that the phrase "compensation for personal services" includes all types of property "economically attributable to the survivor," the entire community will be taxed only when the husband dies first. (Otherwise, as provided by Section 811(e)(2) previously summarized, the amount attributable to the surviving spouse up to the amount over which he had the power of testamentary disposal would not be included in the gross estate.) Therefore, the situation covered by the instant case, in which relief could be afforded by a change in the State law, is a narrow one which normally will arise only when the wife outlives the husband by a period of less than five years. The 1947 Oklahoma Legislature passed an act which eliminates from the gross estate the _surviving_ spouse's share in community property. It is only by appropriate legislative action that an exemption of the kind here sought can be created. Such exemption may not be accomplished by implication from inapplicable provisions on the theory that the Legislature _would_ have intended some such provision to apply _if_ it could have foreseen this particular contingency.

The result urged by the taxpayer in this case would therefore rest on supposition, not law; and, in addition, would be predicated on a complete disregard of Texas property law in that there would be no recognition of the passing of the wife's community interest at her death nor of the receipt of that interest by others. It is the privilege of such receipt which is expressly taxed by the provisions of Chapter 5. You are therefore advised that the tax as assessed and paid under protest was lawfully owed the State of Texas by virtue of the provisions of Chapter 5, Title 122, R.C.S.

## SUMMARY

The inclusion of the entire community estate in determining amount of Federal Estate Tax due at death of husband, which inclusion increased the amount of taxes paid the State under Ch. 5a, Title 122, V.C.S., does not prevent the State from imposing an inheritance tax under Ch. 5, Title 122, V.C.S., on the right to succession to the wife's one-half community interest, even though the wife's death occurred less than five years after the death of the husband.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Marietta Creel*

Mrs. Marietta Creel
     Assistant

MC/JCP

APPROVED:

*Fagan Dickson*

FIRST ASSISTANT
ATTORNEY GENERAL